# UNITED STATES DISTRICT COURT

Eastern District of Kentucky
Southern Division at London

| | |
|---|---|
| Lenore Threeths<br>    *Plaintiff*<br><br>v.<br><br>Equifax Information Services, LLC<br>    *Defendant*<br>Serve:<br>        Corporation Service Company<br>        421 West Main Street<br>        Frankfort, KY 40601<br><br>Experian Information Solutions, Inc.<br>    *Defendant*<br>Serve:<br>        CT Corporation System<br>        306 West Main Street, Suite 512<br>        Frankfort, KY 40601<br><br>Mariner Finance, LLC<br>    *Defendant*<br>Serve:<br>        Corporation Service Company<br>        421 West Main Street<br>        Frankfort, KY 40601 | )<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT and DEMAND FOR JURY TRIAL

### INTRODUCTION

1.      This is a complaint by Plaintiff Lenore Threeths for damages for the separate violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") by Defendants Equifax Information Services, LLC, Defendant Experian Information Solutions, LLC, and Defendant Mariner Finance, LLC.

### JURISDICTION AND VENUE

2.      This court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p and venue

is proper because Plaintiff lives and resides in Knox County, Kentucky and because all or most of the relevant events as alleged below occurred in Knox County, Kentucky, which is located within this District.

## PARTIES

3.      Plaintiff Lenore Threeths ("Threeths") is a natural person who resides in Knox County, Kentucky and a "consumer" within the meaning of the FCRA as defined at 15 U.S.C. § 1681(c).

4.      Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company with its principal place of business located at 1550 Peachtree Street NW, Atlanta, GA 30309 registered to do business with Kentucky Secretary of State. Equifax is a "consumer reporting agency" within the meaning of the FCRA.

5.      Defendant Experian Information Solutions, Inc. ("Experian") is a foreign corporation whose principal place of business is located at 475 Anton Boulevard, Costa Mesa, CA 92626 registered to do business with Kentucky Secretary of State. Experian is a "consumer reporting agency" within the meaning of the FCRA.

6.      Defendant Mariner Finance, LLC ("Mariner Finance") is a foreign limited liability company that has registered with the Kentucky Secretary of State. Mariner's principal place of business is located at 8211 Town Center Drive, Nottingham, MD 21236. Mariner is a furnisher of information within the meaning of the FCRA.

## RELEVANT FACTS

7.      Defendant Mariner Finance is a consumer lender to Kentucky consumers that makes small dollar loans or acquires such loans, made by others, to financially distressed consumers at high interest rates.

8.      On November 20, 2017, Plaintiff Threeths entered into a personal loan with Regency Finance Company ("Regency") (the "Regency Note").  A true and accurate copy of the Regency Note is filed as "Exhibit A."

9.      The Regency Note is a precomputed finance charge loan that added an up-front finance charge to the principal amount of the loan instead of interest in the amount of $1,200.51.

10.     Ms. Threeths financed a principal amount of $1,732.59 under the Regency Note making the loan total with principal plus the precomputed finance charge $2,933.10.

11.     On March 1, 2019 Mariner Finance acquired Regency according to Regency's

website (https://www.regencyfinance.com/ visited September 30, 2020), thereby making Mariner Regency's successor in interest to the Regency Note.

      12.    Mariner Finance filed suit against Ms. Threeths on November 12, 2019 in the Knox District Court of Knox County, Kentucky under case number 19-C-00835 in an attempt to collect the Regency Note from Ms. Threeths (the "State Collection Lawsuit"). A true and accurate copy of the complaint in the State Collection Lawsuit (the "Collection Complaint") is filed as Exhibit "B" and states in relevant part:

  2.  The Defendant, LENORE THREETHS, executed and delivered to Plaintiff a note and security agreement.  A copy of the note is attached hereto and marked Exhibit "A".

  3.  The note described above is fully due and payable since the Defendant, LENORE THREETHS, has failed to make payments in accordance with the terms of the note. A principle balance of $1629.46, plus interest that accrues after 11/01/2019 at the rate set forth in the note is payable on the note.

  4.  Plaintiff has referred this claim to its attorney who is not a salaried employee. Pursuant to the attached note. Plaintiff is entitled to collect from the Defendant its attorney's fees to the extent actually paid or agreed to be paid. Attorney fees agreed to be paid equal the sum of one-third of the amount sued upon and collected.

      13.    On February 29, 2020, Mariner Finance moved for default judgment against Ms. Threeths in the State Collection Lawsuit (the "Motion for Default"). A copy of the Motion for Default is filed as "Exhibit C" and states in relevant part:

    Based on the affirmation attached to the complaint filed in this action, the Plaintiff moves the Court for an entry of default judgment against the Defendant, LENORE THREETHS, plus costs, together with interest that accrues at the rate 37.5400 set forth in the note. A copy of the note is attached and marked Exhibit B.

14.     On March 3, 2020, the Knox District Court granted the Motion for Default and entered a default judgment against Ms. Threeths in the State Collection Lawsuit (the "Default Judgment"). A copy of the Default Judgment is filed as "Exhibit D" and states in relevant part:

IT IS HEREBY ORDERED AND ADJUDGED as follows:

1. That Plaintiff shall recover from the Defendant, LENORE THREETHS, the sum of $1629.46, plus interest that accrues after 11/04/2019, at the rate set 37.5400%.

2. The Plaintiff shall recover, in addition to the above, a reasonable attorney's fees in the amount of $543.15.

3. The Plaintiff shall recover its costs expended herein in the amount of $178.50 plus additional cost as incurred. This is a final judgment and there is no just reason for delay. Execution may issue forthwith.

15.     On July 8, 2020, counsel for Ms. Threeths filed a motion in the State Collection Lawsuit to alter, amend or vacate the Default Judgment under Ky. R. Civ. P. 55.02 and 60.02 on two grounds:

(a) the Regency Note by its objective terms did not provide any right to Mariner to impose or collect contract interest at any rate;

(b) even if contract interest was available under the Regency Note, the Default Judgment awarded Mariner interest at the rate of 37.54% per annum which exceeds the statutory maximum allowed under KRS 286.4-530(1) of 36% per annum, which rendered the contract void as a matter of law.

16.     After hearing arguments of counsel, the Knox District Court granted Ms. Threeths' motion in the State Collection Lawsuit, vacated the Default Judgment, and dismissed Mariner Finance's Collection Complaint with prejudice on grounds that the underlying Regency Note was void. A true and accurate copy of the August 20, 2020 Order is filed as Exhibit "E" and provides in relevant part:

-4-

This matter comes before the Court on Defendant Lenore Threeths' Motion pursuant to CR 55.02 and 60.02 to vacate this Court's Order granting judgment to Plaintiff, Mariner Finance, LLC/London, and to dismiss this action with prejudice on grounds that the contract at the basis of the judgment is void pursuant to KRS 286.4-991(1) for seeking to collect and receive interest in excess of that allowed by KRS 286.4-530. The Court, having heard the arguments of counsel and being otherwise sufficiently advised, finds as follows:

Defendant's Motion to Vacate this Court's Order of March 3, 2020 granting judgment to Plaintiff and to dismiss this action with prejudice is GRANTED. This Court's Order of March 3, 2020 granting judgment to Plaintiff is hereby VACATED, and this action is hereby DISMISSED WITH PREJUDICE.

17.     Regency and Mariner Finance have filed numerous lawsuits against Kentucky consumers numbering in the hundreds, and possibly thousands, to attempt to collect and actually collect debts on defaulted precomputed finance charge loans like that of Regency Note governed by KRS 286.4-530 *et seq.* which loans have no terms giving Regency and/or Mariner Finance the right to convert such loans to interest bearing loans and therefore do not give Regency or Mariner Finance the right to charge, accrue and collect contract interest, causing damages to such consumers.

18.     Recently, a District Judge in the case of *Mariner Finance, LLC v. Hollingsworth*, 19-C-01230 (Order entered August 13, 2020, Hopkins Dist. Ct.) dismissed a similar case brought by Mariner Finance, LLC based its finding of Mariner's engaging in an intentional or grossly negligent pattern and practice of making misrepresentations to the Court in the bringing of lawsuit to collect defaulted loans such as the Regency Note (the "Hollingsworth Order"). A true and accurate copy of the Hollingsworth Order is filed as Exhibit "F" and states in relevant part:

It is the duty of counsel and this Court to assure that default judgments are entered consistently with the pleadings filed in a case. Collection actions such as the one filed by Mariner in this case place a heavy burden on the Court's docket and workload. Consequently, courts rely on the representations of counsel to be true, accurate, and correct in connection with moving default judgment. Indeed, CR 11 places an affirmative duty of truthfulness on counsel in this regard.

The Court finds that Mariner has a pattern and practice of filing collection lawsuits that seek interest in excess of that allowed by contract or statute. The Court further finds that this pattern and practice is either intentional or grossly negligent. Consequently, the Court finds that dismissal of this action with prejudice is a proper and correct sanction for Mariner's conduct.

19.    The collection of loan debts owed by Kentucky consumers like the Regency Note is a core part of Mariner Finance's business model and regular business practice which acts and conduct to collect such loans.

20.    Mariner Finance and Regency routinely use the Kentucky Court System as a heavily subsidized loan enforcement and collection mechanism. Mariner Finance files hundreds if not thousands of collection actions in the Commonwealth every year.

21.    A quick search on KY CourtNet reveals 1,650 cases in which Mariner Finance is a party and 707 cases in which Regency is a party in the five (5) most populous Kentucky counties—Jefferson, Fayette, Kenton, Boone, and Warren. Almost all of these cases are collection action filed by Mariner Finance and Regency in attempt to collect defaulted loans from Kentucky consumers. The overwhelming majority of these cases end in a default judgment.

22.    A recent report by the Pew Charitable Trust explains the problem thusly:

The business of state civil courts has changed over the past three decades. In 1990, a typical civil court docket featured cases with two opposing sides, each with an attorney, most frequently regarding commercial matters and disputes over contracts, injuries, and other harms. The lawyers presented their cases, and the judge, acting as the neutral arbiter, rendered a decision based on those legal and factual arguments.

Thirty years later, that docket is dominated not by cases involving

adversaries seeking redress for an injury or business dispute, but rather by cases in which a company represented by an attorney sues an individual, usually without the benefit of legal counsel, for money owed. The most common type of such business-to-consumer lawsuits is debt claims, also called consumer debt and debt collection lawsuits. In the typical debt claim case, a business—often a company that buys delinquent debt from the original creditor—sues an individual to collect on a debt. The amount of these claims is almost always less than $10,000 and frequently under $5,000, and typically involves unpaid medical bills, credit card balances, auto loans, student debt, and other types of consumer credit, excluding housing (mortgage or rent).

*    *    *    *    *

To help state leaders respond to the changing realities in civil courts, The Pew Charitable Trusts sought to determine what local, state, and national data exist on debt collection cases and what insights those data could provide. The researchers supplemented that analysis with a review of debt claims research and interviews with consumer experts, creditors, lenders, attorneys, and court officials.

The key findings are:

- Fewer people are using the courts for civil cases. Civil caseloads dropped more than 18 percent from 2009 to 2017. Although no research to date has identified the factors that led to this decline, previous Pew research shows lack of civil legal problems is not one of them: In 2018 alone, more than half of all U.S. households experienced one or more legal issues that could have gone to court, including 1 in 8 with a legal problem related to debt.

- **Debt claims grew to dominate state civil court dockets in recent decades**. From 1993 to 2013**, the number of debt collection suits more than doubled nationwide, from less than 1.7 million to about 4 million, and consumed a growing share of civil dockets, <u>rising from an estimated 1 in 9 civil cases to 1 in 4</u>….**

- **People sued for debts rarely have legal representation**, but those who do tend to have better outcomes. Research on debt collection lawsuits from 2010 to 2019 has shown that less than 10 percent of defendants have counsel, compared with nearly all plaintiffs. According to studies in multiple jurisdictions, consumers with legal representation in a debt

-7-

claim are more likely to win their case outright or reach a mutually agreed settlement with the plaintiff.

- **Debt lawsuits frequently end in default judgment, indicating that many people do not respond when sued for a debt.** Over the past decade in the jurisdictions for which data are available, courts have **resolved more than 70 percent of debt collection lawsuits with default judgments for the plaintiff.** Unlike most court rulings, these judgments are issued…by default and without consideration of the facts of the complaint—and instead are issued in cases where the defendant does not show up to court or respond to the suit. The prevalence of these judgments indicates that millions of consumers do not participate in debt claims against them.

- **Default judgments exact heavy tolls on consumers.** Courts routinely order consumers to pay accrued interest as well as court fees, which together can exceed the original amount owed. Other harmful consequences can include garnishment of wages or bank accounts, seizure of personal property, and even incarceration.

(bolding and underlining added) [1]

23.    In July 2020, Ms. Threeths reviewed her consumer credit reports from the three major consumer reporting agencies ("CRA's") being Defendant Equifax, Defendant Experian, and Trans Union, LLC ("Trans Union").

24.    Ms. Threeths discovered credit information Mariner Finance was furnishing to the CRA's in connection with the Mariner Loan (the "Mariner Tradeline").

25.    Ms. Threeths was upset and alarmed by the credit information being reported in the Mariner Tradeline in that Mariner Finance was continuing to report that the Regency Note was a past-due charged-off account with a current balance due of $2,390 as of October 2020.

26.    On December 1, 2020, Ms. Threeths sent dispute letters to the CRA's disputing the information set forth in the Mariner Tradeline.

27.    Ms. Threeths' dispute letters to Equifax and Experian both stated:

---

[1]    https://www.pewtrusts.org/en/research-and-analysis/reports/2020/05/how-debt-collectors-are-transforming-the-business-of-state-courts (visited June 28, 2020).

You are reporting false and inaccurate credit information about me. I dispute the following and ask that you correct the information on my credit report:

Mariner Finance, LLC, 8211 Town Center Drive, Nottingham, MD 21236
Alleged Amount due as of October 31, 2020:  $2,390

The above Mariner Finance, LLC ("Mariner") tradeline is being reported falsely and incorrectly. On August 26, 2019, Mariner sued me in Knox District Court, Case No. 19-C-00835, to collect the above-referenced account. On March 29, 2020, the Knox District Court entered default judgment against me. The default judgment provided in pertinent part:



"ELECTRONICALLY FILED"
COMMONWEALTH OF KENTUCKY
KNOX DISTRICT COURT
CIVIL ACTION NO. 19-C-835

Mariner Finance LLC/ London

VS                                    JUDGMENT

LENORE THREETHS                                    DEFENDANT

    This matter comes before the Court by Plaintiff's motion for default judgment and motion for attorney's fees.

    The Court has reviewed the record and finds that the party is before the Court by service of summons and being otherwise sufficiently advised;

    IT IS HEREBY ORDERED AND ADJUDGED as follows:

        1. That Plaintiff shall recover from the Defendant, LENORE THREETHS, the sum of $1629.46, plus interest that accrues after 11/04/2019, at the rate set 37.5400%.

After the default judgment was entered, I moved to vacate the default judgment on grounds that the underlying loan did not provide for a contract rate of interest and, consequently, the interest of 37.54% per annum was usurious and unlawful under Kentucky law.

On August 20, 2020, the Knox District Court granted the motion and entered an order finding that the underlying Mariner loan was void because it violated Kentucky law. The Court also vacated Mariner's lawsuit with prejudice:

Commonwealth of Kentucky
Knox District Court
Case No. 19-C-00835
*Filed Electronically*



Mariner Finance, LLC/London

PLAINTIFF

v.                                    **ORDER**

Lenore Threeths                                    DEFENDANT

      This matter comes before the Court on Defendant Lenore Threeths' Motion pursuant to CR 55.02 and 60.02 to vacate this Court's Order granting judgment to Plaintiff, Mariner Finance, LLC/London, and to dismiss this action with prejudice on grounds that the contract at the basis of the judgment is void pursuant to KRS 286.4-991(1) for seeking to collect and receive interest in excess of that allowed by KRS 286.4-530. The Court, having heard the arguments of counsel and being otherwise sufficiently advised, finds as follows:

      Defendant's Motion to Vacate this Court's Order of March 3, 2020 granting judgment to Plaintiff and to dismiss this action with prejudice is GRANTED. This Court's Order of March 3, 2020 granting judgment to Plaintiff is hereby VACATED, and this action is hereby DISMISSED WITH PREJUDICE.

Date: _8/20/20_      Signed: _____

                             Judge, Knox District Court

      Consequently, there is no loan or agreement between Mariner and me on which it has any basis to report a balance due. The loan is void. Mariner's lawsuit to collect the loan from me was dismissed WITH PREJUDICE. This was a ruling on the merits. The above credit information that I still owe Mariner $2,390 is false and inaccurate.

      I have included copies of all entered court documents that support my dispute, including a copy of the complaint and note in the underlying collection case and the Amended Judgment for purposes of verification and substantiation of my claims.

-10-

Please investigate and correct my credit report accordingly. As part of your investigation(s), forward a copy of this letter, together with all enclosures, if any, to the sources of the information listed above. After your investigation, please send me a free and corrected credit report so that I may review it. Please contact me using the contact information at the top of this letter if you need more information.

Please note that my attorney helped me to write this letter.

Sincerely,

*Lenore Threeths*
Lenore Threeths

28.     Receipt of Ms. Threeths' December 1, 2020 dispute letters triggered each CRA's affirmative duty under 15 U.S.C. § 1681i(a)(2) to send Mariner prompt notice of Ms. Threeths' dispute within five (5) business days of receiving the disputes.

29.     The CRA's complied with their statutory requirements and sent timely notice of Ms. Threeths' disputes to Mariner Finance.

30.     Mariner Finance failed to conduct a reasonable investigation of Ms. Threeths' disputes. After investigating Ms. Threeths' disputes, Mariner Finance continued to falsely and inaccurately report the Mariner Finance Tradeline as an ongoing collection account with a positive past due balance in direct contravention of the Knox District Court's Order vacating the Default Judgment on grounds that the underlying contract was void and dismissing Mariner Finance's State Collection Lawsuit against Ms. Threeths with prejudice.

31.     Equifax and Experian each failed to conduct a reasonable investigation of Ms. Threeths' disputes. Despite having all the documentary evidence necessary to establish that the Knox District Court ruled that the Regency Note was void and dismissing Mariner Finance's complaint against Ms. Threeths with prejudice, both Equifax and Experian continued to report the false and inaccurate credit information furnished by Mariner.

32.     On December 16, 2020, Experian sent Ms. Threeths the results of its reinvestigation of Ms. Threeths' dispute in which Experian falsely confirmed that the information furnished by Mariner was accurate:



33.     On December 15, 2020, Equifax sent Ms. Threeths the results of its reinvestigation of Ms. Threeths' dispute which investigative response of Equifax falsely confirmed that the information furnished by Mariner Financewas accurate:

34.     The post-dispute Mariner Finance Tradeline published by Equifax and Experian is

false and inaccurate since the Knox District Court's Order found that the Regency Note was void and dismissed Mariner's claims against Ms. Threeths with prejudice. Nevertheless, both Equifax and Experian falsely and inaccurately reported that the balance due on the Regency Note as reported in the Mariner Finance Tradeline was $2,437 to its users and subscribers.

35. Mariner Finance violated the FCRA by failing to conduct a reasonable investigation of Ms. Threeths' disputes. After investigating Ms. Threeths' disputes, Mariner Finance continued to falsely report that the Mariner Tradeline according to the terms of the Default Judgment despite the Knox District Court's Order vacating the Default Judgment and dismissing Mariner Finance's claims against Ms. Threeths with prejudice.

36. Equifax and Experian each violated the FCRA by failing to conduct a reasonable investigation of Ms. Threeths' disputes and giving meaningful consideration of the documents submitted by Ms. Threeths in connection with her disputes of the Mariner Finance Tradeline. The post-dispute reports by Equifax and Experian that each CRA published to its users and subscribes included false and inaccurate credit information about the Mariner Finance Tradeline, *i.e.* Equifax and Experian each reported the Mariner Finance Tradeline with a current balance due of $2,437. Based on the documents submitted by Ms. Threeths and Mariner Finance's demonstrated history of failing to conduct meaningful investigations of consumer disputes, neither Equifax nor Experian should have or could have verified the credit information furnished by Mariner Finance as accurate with any reasonable certainty.

37. As a result of the inaccurate credit information concerning the Mariner Finance Tradeline that the CRA's published to its users and subscribers, Ms. Threeths was denied credit, had to pay more for credit, and experienced a decrease in her credit score, and financial losses in out-of-pocket expenses and lost time.

## CLAIMS FOR RELIEF

### I. Claims against Mariner Finance, LLC

38. The above-described acts and omissions of Defendant Mariner Finance violate the FCRA under 15 U.S.C. § 1681s-2(b) when, after being informed by the CRA's that Ms. Threeths disputed the accuracy of the information it was providing concerning Ms. Threeths and the Mariner Finance Tradeline, Mariner Finance willfully failed to conduct a proper investigation of Ms. Threeths' dispute filed with the CRA's that Mariner Finance was furnishing false negative credit information about Ms. Threeths and the Mariner Finance Tradeline.

39. Mariner Finance willfully failed to review all relevant information provided by the CRA's to Mariner in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

40.     Mariner Finance willfully failed to direct the CRA's to delete inaccurate information about Ms. Threeths pertaining to the Mariner Finance Tradeline as required by 15 U.S.C. §1681s-2(b)(C) by Mariner Finance continuing to falsely report the Mariner Finance Tradeline as a charged-off account with a positive balance due.

41.     As a result of Mariner Finance's failure to conduct a reasonable investigation of Ms. Threeths's dispute, Ms. Threeths suffered actual damages in the form of a lowered credit score and denial of credit. She also suffered frustration, irritation, and emotional upset and distress.

42.     Ms. Threeths has a private right of action to assert claims against Mariner Finance arising under 15 U.S.C. §1681s-2(b).

43.     Mariner Finance is liable to Ms. Threeths for the actual damages she has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, all pursuant to 15 U.S.C. §1681n.

44.     In the alternative, Mariner Finance's conduct, actions and inactions were negligent or grossly negligent, rendering Mariner Finance is liable under 15 U.S.C. § 1681o for her actual damages, attorney's fees and costs.

## II.     Claims Against Equifax Information Services, LLC

45.     The foregoing actions and omissions of Defendant Equifax Information Services, LLC ("Equifax") constitute violations of the FCRA.

46.     Equifax violated 15 U.S.C. § 1681i(a) by failing or refusing to conduct a reasonable investigation of Ms. Threeths' dispute concerning the accuracy of the credit information contained in the Mariner Finance Tradeline by Equifax failing to consider or review the documents that Ms. Threeths submitted with her dispute that establish that Mariner Finance has no right to recover any amount from Ms. Threeths under the Regency Note. Nevertheless, after investigating Ms. Threeths's dispute, Equifax continued to falsely report the Mariner Finance Tradeline as a charged-off account with a positive balance due.

47.     Several lawsuits have been filed against Equifax that involve false and inaccurate credit information furnished by Mariner Finance and based on these other lawsuits, Equifax should not be able to rely on Mariner Finance as a reliable source of credit information.

48.     A reasonable investigation of Ms. Threeths's disputes when coupled with the filed and entered court documents included with her dispute should have led Equifax to determine that

-14-

it could not verify the credit information furnished by Mariner Finance with any confidence that the information was correct.  15 U.S.C. § 1681i(a)(4) expressly required Equifax to consider the information furnished by Ms. Threeths with her dispute. And 15 U.S.C. § 1681i(a)(5) expressly required Equifax to delete the Mariner Finance Tradeline if it could not verify its accuracy:

> If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall—
>
>> (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
>>
>> (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

49.     Equifax also violated the FCRA by failing to send Ms. Threeths notice of the results of investigation of her dispute concerning the Mariner Finance Tradeline.

50.     Equifax's violations of the FCRA caused Ms. Threeths (i) to be denied credit and pay more for credit; (ii) to suffer frustration, anxiety, and emotional distress; and (iii) to incur out-of-pocket expenses.

51.     Equifax's conduct, actions and inactions were willful rendering Equifax liable under 15 U.S.C. § 1681n for Plaitiff Threeths actual damages, statutory damages, punitive damages, attorney's fees and costs.

52.     Alternatively, Equifax's conduct, actions and inactions were grossly negligent or negligent rendering Equifax liable under 15 U.S.C. § 1681o for Plaintiff Threeths actual damages, attorney's fees and costs.

### III.   Claims against Experian Information Solutions, Inc.

53.     The foregoing actions and omissions of Defendant Experian constitute violations of the FCRA under 15 U.S.C. § 1681i(a)(1) by failing or refusing to conduct a reasonable investigation of Ms. Threeths' dispute concerning the accuracy of the credit information contained in the Mariner Finance Tradeline in that Experian failed to consider or review the documents that Ms. Threeths submitted with her dispute that establish that Mariner Finance has no right to recover any amount from Ms. Threeths under the Regency Note. Nevertheless, after investigating Ms. Threeths's dispute, Experian continued to falsely report the Mariner Finance Tradeline as a

charged-off account with a positive balance due.

54.     Several lawsuits have been filed against Experian that involve false and inaccurate credit information furnished by Mariner Finance and therefore based on these other lawsuits, Experian should not be able to rely on Mariner as a reliable source of credit information.

55.     A reasonable investigation of Ms. Threeths's disputes, when coupled with the filed and entered court documents included with her dispute, should have led Experian to determine that it could not verify the credit information furnished by Mariner Finance with any confidence that the information was correct.  15 U.S.C. § 1681i(a)(4) expressly required Experian to consider the information furnished by Ms. Threeths with her dispute. And 15 U.S.C. § 1681i(a)(5) expressly required Experian to delete the Mariner Finance Tradeline if it could not verify its accuracy:

> If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall—
>
> > (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
> >
> > (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

56.     Experian's violations of the FCRA caused Ms. Threeths (i) to be denied credit and pay more for credit; (ii) to suffer frustration, anxiety, and emotional distress; and (iii) to incur out-of-pocket expenses.

57.     Experian's conduct, actions and inactions were willful rendering Experian liable under 15 U.S.C. § 1681n for Plaintiff Threeths actual damages, statutory damages, punitive damages, attorney's fees and costs.

58.     Alternative, Experian's conduct, actions and inactions were grossly negligent or negligent, rendering Experian liable under 15 U.S.C. § 1681o for Plaintiff Threeths actual damages, attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Lenore Threeths requests that the Court grant her the following relief:

1.    Award Plaintiff the maximum statutory damages pursuant to 15 U.S.C. §1681n against each Defendant for each Defendant's willful violations of the FCRA;

2.    Award Plaintiff her actual damages against each Defendant for each Defendant's violations of the FCRA;

3.    Award Plaintiff punitive damages pursuant to 15 U.S.C. §1681n against each Defendant for each Defendant's willful violations of the FCRA;

4.    Award Plaintiff her reasonable attorney's fees and costs;

5.    A trial by jury; and

6.    Such other relief as may be just and proper.

Submitted by:

/s/ James R. McKenzie
James R. McKenzie
*James R. McKenzie Attorney, PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel:   (502) 371-2179
Fax:   (502) 257-7309
jmckenzie@jmckenzielaw.com

James H. Lawson
*Lawson at Law, PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel:   (502) 473-6525
Fax:   (502) 473-6561
james@kyconsumerlaw.com